UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EVONNA SMITH,

    Plaintiff,

vs.                                              CASE NO. CV 04-J-2411-S

AMERICAN FAMILY CARE, INC.,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant American Family Care Inc.'s motion for summary judgment and brief in support (docs. 11 and 12), plaintiff's response (doc. 14) and defendant's reply (doc. 15). The court has reviewed the pleadings and the parties' evidentiary submissions. Having considered said pleadings and evidence, the court finds as follows:

### I. Factual Background

The plaintiff began working for the defendant in October, 2003 as a medical assistant. Complaint, ¶ 23.[1] The plaintiff asserts she was called "Emma" and "little girl" by other employees. Complaint, ¶ 23. The plaintiff commenced this action by filing a complaint pursuant to Title VII alleging the defendant discriminated against

---

[1] The complaint contains two paragraphs numbered "23." The court is referring to the first ¶ 23.

her on the basis of race (black) in violation of 42 U.S.C. § 1981 by allowing a racially hostile work environment to exist.[2]  Complaint, ¶ 14.  She also asserts she was paid at a lower rate than other employees because of her race.[3]  Complaint, ¶ 26.  In her opposition to the defendant's motion for summary judgment, the plaintiff states her wrongful discharge claim is still pending, although she does not specifically allege a cause of action for wrongful termination or retaliatory discharge in her complaint.[4]

---

[2] The original complaint had ten named plaintiffs and was assigned case number CV 04-924-S.  By Order of the court dated August 5, 2004, the plaintiffs' claims were severed and each plaintiff was ordered to pay a filing fee, upon which an individual case was opened for each of the ten plaintiffs' claims.  However, plaintiff Smith did not file an amended complaint addressing only her claims against the defendant.

[3] In plaintiff's opposition, she voluntarily dismissed her claims based on a racially hostile work environment and disparate pay.  Plaintiff's opposition, at 4.

[4] The plaintiff is apparently confused by the difference between alleging a claim, and testimony to support the facts of that claim.  The plaintiff states that "[t]he Defendant asserts erroneously that Plaintiff does not allege that she was discharged "because of her race or otherwise unlawfully.  To the contrary, Plaintiff testified more than once that she believed she was terminated because she was black..."  Plaintiff opposition, at 4.  However, the only allegation in the complaint concerning a claim for "discharge" is as follows:

> V.  Cause of Action - (Termination)
> 30.  Plaintiffs re-allege and incorporate by reference paragraphs 1-29 above with the same force and effect as if fully stated in specific detail herein below.
> 31.  The defendant discriminated on the basis of race against the plaintiffs, with respect to their employment contract by refusing to contract with plaintiff (sic) on terms free of racial bias with respect to termination and/or retaliation, in violation of 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991, among other laws.
> 32.  Plaintiff, Quintina Davis, was terminated on or about January 29, 2004 in retaliation for complaints about the racially hostile work atmosphere.
> 33.  Plaintiff, Kevin Jablonsky, was terminated in retaliation for complaining of discrimination and/or for socializing with African-Americans.
> 34.  Plaintiff, Betty Stanley, was constructively discharged on or

*See* plaintiff's opposition at 4; plaintiff depo. at 78. The plaintiff further states that her discharge, assault and battery, and invasion of privacy claims are still pending.[5] Plaintiff's opposition, at 4. However, the plaintiff has never stated any state law claim of any type in this litigation. Therefore, the court considers only the "discharge claim" of the plaintiff. *See* plaintiff's opposition, at 4.

The plaintiff was employed by the defendant in its Green Springs Clinic as a medical assistant. Plaintiff depo. at 22, 26. She was hired September 18, 2003, but did not begin work until October, 2003. Plaintiff depo. at 23. The plaintiff asserts that Rebecca Jordan, an LPN, told her that the Green Springs Clinic was dirty and known as the "ghetto clinic." Plaintiff depo. at 40. The plaintiff complained to Kay

---

> about October 6, 2003. The defendant made her working conditions intolerable. Ms. Stanley's "alleged condition" was broadcast throughout the clinic and she was referred to as an alcoholic.

Nothing in this claim alleges that plaintiff Smith was wrongfully terminated, or terminated at all, except for paragraph 31. While the court questions whether this count of the complaint included a claim by plaintiff Smith, the court will allow this claim to proceed for purposes of consideration of the defendant's motion for summary judgment.

[5]In fact, she states that the defendant's motion for summary judgment should be denied as to these claims due to the defendant's failure to address them. The plaintiff having failed to ever plead such claims, the court declines to grant or deny summary judgment as no such claims are pending. The plaintiff states in her opposition to summary judgment that "[o]n July 19, 2004, Plaintiff amended her complaint to add this state law claim." Plaintiff's opposition at 8, n. 3. However, the motion to amend the complaint filed in CV 04-924-S on July 19, 2004, was denied by the court on July 21, 2004, due to the court having severed each of the plaintiffs' claims, with leave for plaintiff Quintina Davis (the plaintiff in CV 04-924-S) to amend her complaint (doc. 10). No amended complaint, or even motion to amend was filed in plaintiff Smith's case, nor was an amended complaint ever filed in accordance with the court's Order in CV 04-924-S.

Park about this comment, who told plaintiff she would handle the situation. Plaintiff depo. at 40-41. The plaintiff also overheard Janice Brown refer to the Green Springs Clinic as the "ghetto clinic" about ten times. Plaintiff depo. at 41-42. The plaintiff also overheard Janice Brown say that the Fairfield Clinic also should be called the "ghetto clinic." Plaintiff depo. at 43. The plaintiff never complained to anyone about these overheard comments. Plaintiff depo. at 44.

The plaintiff has other complaints concerning her training and working conditions. However, as the plaintiff has dismissed her claim for hostile work environment, the court finds these complaints are not relevant to the claims remaining in this case. For example, the plaintiff complains that one of the clinic doctors, Dr. Peacock, stated to a patient that "in Africa, the blacks were the only ones that had to worry about AIDS and HIV, and the whites that lived over there did not – did not have to worry about anything." Plaintiff depo. at 58.

The plaintiff further complains that the other clinic doctor, Dr. Bean, called her "little girl." Plaintiff depo. at 57. He also called her "Emma," "Ivana" and "Havannah." Plaintiff depo. at 60. The plaintiff states he mispronounced her name because Dr. Bean did not want a black medical assistant working with him on a daily basis. Plaintiff depo. at 62. However, he properly pronounced the names of other black women working at the clinic. Plaintiff depo. at 63. The plaintiff draws her

conclusion that Dr. Bean did not want a black medical assistance working with him based on the following:

> Havannah (sic) is a country that is pretty much based on Cubans and African-Americans; I would say it's a lot of people that live there. And most of them are pretty much poor. And I felt like the names that he would call me such as little girl and Havannah was being – he was being racist.
> ...
> I'm not going to say that they're all poor there. But mostly black and Cubans are poor, they live there.

Plaintiff depo. at 64. However, no one ever said anything to lead her to believe Dr. Bean did not want a black medical assistant. Plaintiff depo. at 63. When asked why calling her the wrong name was discriminatory, the plaintiff responded "[b]ecause of the other names and the other things he did." Plaintiff depo. at 66. She stated her complaint is not that Dr. Bean could not get her name right, but then testified that it bothered her because "that was not my name." Plaintiff depo. at 67.

Regarding her termination, the plaintiff stated she was on the phone with a patient at the nurses' station and Dr. Bean began screaming at her to get off the phone. Plaintiff depo. at 78-80. She hung up the phone and Dr. Bean told her to come assist him. Plaintiff depo. at 81. The plaintiff told him she would not be spoken to in that manner, and reported the incident to Janet Broome, who was the clinic manager. Plaintiff depo. at 81. The plaintiff relates that she was telling Janet Broome about the incident when Dr. Bean came into Broome's office, stood behind the plaintiff, put his

5

hands on her shoulders, started pressing down, and stated that the plaintiff needed to be with him at all times. Plaintiff depo. at 82-83. The plaintiff told Dr. Bean to take his hands off of her because she "was not his child." Plaintiff depo. at 83. The plaintiff calmed down and Broome asked her not to clock out, and stated that she could work in the lab so that she would not be by Dr. Bean. Plaintiff depo. at 84. This upset the plaintiff as well. Plaintiff depo. at 84-85. At the time of this incident, the plaintiff had been employed by the defendant for six months. Plaintiff depo. at 84. The following day, the plaintiff called the police because Dr. Bean "put his hands on me." Plaintiff depo. at 85-86. All the police did was take a report. Plaintiff depo. at 86.

On April 21, 2004, the plaintiff was given a warning for "failure to follow policy" but she refused to sign it. Plaintiff depo. at 90; exhibit 5 to plaintiff depo. The plaintiff stated that Janice Broome told her to come in the office. Plaintiff depo. at 88. Broome told her that "this was the hardest thing that she had to do; that I was a good worker; and she was told that she would have to tell me that I was suspended until further investigation." Plaintiff depo. at 88. After she was suspended she called the corporate office, but never heard from the clinic or the corporate office. Plaintiff depo. at 89-90. The warning concerns the plaintiff calling the police regarding the altercation between her and Dr. Bean. Exhibit 5 to plaintiff depo. At her deposition,

6

the plaintiff was specifically asked if she was fired or if she quit, and the plaintiff replied, "[a]fter she told me I was suspended, she said that they were supposed to get back in touch with me, and I never heard from anyone." Plaintiff depo. at 89.

The plaintiff maintains she was really written up for "being an African-American working side by side with Dr. Bean." Plaintiff depo. at 93. She further testified that she does not think she was "actually written up for going to the police when they didn't think you should have done that." Plaintiff depo. at 93-94. In fact, her own attorney asked her, "Did you understand that you were being terminated because you made a complaint about that racist incident to the police?" Plaintiff depo. at 108. The plaintiff replied, "No, sir." Plaintiff depo. at 108.

Sherri Dunne, Human Resources Director for defendant during the relevant time, stated that the altercation between the plaintiff and Dr. Bean occurred because Dr. Bean needed assistance suturing a patient, and the plaintiff was not providing that assistance. Dunn depo. at 47.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A genuine issue of

material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

### III. Analysis

The sole claim that the court can find pending is that for "discharge." Assuming for purposes of the pending motion that the plaintiff indeed pleaded such a claim, the court considers the same on its merits.  The elements for a prima facie case of retaliation are that the plaintiff (1) engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).  *See also Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

The plaintiff has failed to show that she engaged in any statutorily protected activity and was therefore terminated.  Rather, at her deposition, the plaintiff repeatedly stated that she was discharged because Dr. Bean did not want a black medical assistant, not because she reported his touching her on the shoulders to the police.  In her opposition to the defendant's motion for summary judgment, the plaintiff asserts for the first time that she was terminated in response to her complaints

9

that Dr. Bean could not get her name right.  However, the plaintiff failed to offer any evidence that she ever complained about his inability to call her the right name.  As such, the court finds that the plaintiff has failed to establish her prima facie burden because she has not offered any evidence (as opposed to legal argument) that her termination was causally connected to any protected activity in which she engaged.  Rather, at her deposition, the plaintiff specifically denied she was terminated in response to her complaint to the police.

Having considered the foregoing, the court is of the opinion that the plaintiff has failed to establish she was terminated in retaliation for complaints of racial harassment.  The court is therefore of the opinion that no genuine issue of facts remain and that the defendant is entitled to judgment in its favor as a matter of law.

### IV. Conclusion

Having considered the foregoing, and being of the opinion that no genuine issues of material fact exist in this case, the court shall dismiss the plaintiff's claims against the defendant by separate order.  Costs are taxed against the plaintiff.

**DONE** and **ORDERED** this the 28th day of April, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE